United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re PATRIOT AMERICAN
HOSPITALITY INC SECURITIES
LITIGATION

This Document Relates To:

THE MERGER ACTION

99-2153 VRW      99-2239 VRW
99-3040 VRW      99-3966 VRW
00-0947 VRW

_____/

MDL No  C-00-1300 VRW

ORDER

        As described in this court's preliminary approval order
of July 14, 2005, Doc #206 (the "7/14/05 order"), the lead
plaintiff in this securities class action, Doris Johnson, has
reached a settlement with the defendants.  In that order, the court
preliminarily approved the proposed settlement, certified a
settlement class pursuant to FRCP 23, preliminarily approved the
proposed plan of allocation, approved (subject to certain
modifications) a form of notice to be sent to class members and
preliminarily approved the lead plaintiff's application for an

United States District Court
For the Northern District of California

award of attorneys' fees and expenses.  Notice having been
disseminated to the class under the terms of the court's order, see
Doc #214 (Hansman Decl), plaintiff now moves for final approval of
the proposed settlement, final approval of the plan of allocation,
an award of attorneys' fees and expenses and authorization to make
future payments to the claims administrator from the settlement
fund.  Doc #212.

The court held a final settlement approval hearing (the
"hearing") on October 18, 2005.  For the reasons that follow, the
court GRANTS final approval of the proposed settlement, GRANTS
final approval of the plan of allocation and GRANTS an award of
attorneys' fees and expenses to lead counsel.  Because the 7/14/05
order addressed many of the issues presented here for final
approval, the court assumes familiarity with the 7/14/05 order; the
court will confine its discussion in this order to recent
developments and further analysis.

I

The court first takes up the issue of the fairness of the
settlement, which, in the aggregate, consists of $12,650,000 in
cash.  In assessing whether a settlement is "fair, reasonable and
adequate" under FRCP 23(e)(1)(C), this court is to consider several
factors:

> (1) the strength of the plaintiffs' case; (2) the
> risk, expense, complexity, and likely duration of
> further litigation; (3) the risk of maintaining
> class action status throughout the trial; (4) the
> amount offered in settlement [presumably in relation
> to maximum potential recovery or in comparison to
> comparable cases]; (5) the extent of discovery

2

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> completed and the stage of the proceedings; (6) the
> experience and views of counsel; (7) the presence of
> a governmental participant; and (8) the reaction of
> class members to the proposed settlement.

<u>Churchill Village v General Electric</u>, 361 F3d 566, 575 (9th Cir

2004) (citing <u>Hanlon v Chrysler Corp</u>, 150 F3d 1011, 1026 (9th Cir

1998)).  To these factors, the court adds (9) the procedure by

which the settlements were arrived at, see <u>Manual for Complex

Litigation (Second)</u> § 30.44 (1985), and (10) the role taken by the

lead plaintiff in that process, a factor somewhat unique to the

PSLRA.

Factor (1) favors the settlement.  The sole remaining

claims arise under sections 11 and 12(a)(2) of the Securities Act

of 1933, and are premised upon two theories:  (1) defendant Patriot

American Hospitality, Inc's ("PAH") failure to disclose in the

merger proxy statement that PAH intended to take on substantial

debt and (2) PAH's failure to disclose its intent to rely upon

high-risk forward equity contracts to fund aggressive expansion

plans.  In order to recover on either theory, the finder of fact

would need to find that PAH specifically intended either to take on

substantial debt or to rely upon forward equity contracts.  And

even if the finder of fact were to find liability, loss causation

and damages have been continuously and vigorously disputed by

defendants.

Factor (2) also militates in favor of the settlement.

Class counsel in the "open market action" (a parallel class action)

highlight a risk of non-recovery or diminished recovery if the

litigation were to continue due to the precarious financial

position of both PAH and its primary directors and officers

3

insurance carrier.  Doc #216 at 13-14; see also <u>Torrisi v Tucson Elec Power Co</u>, 8 F3d 1370, 1376 (9th Cir 1993) (characterizing defendant's financial position as a "predomina[nt]" factor favoring settlement approval).  The court is reluctant to accord too much weight to these unsubstantiated statements.  Still, the court finds that the expense and uncertainty of litigating issues related to intent, causation and damages support a settlement that would confer an immediate, certain and, as discussed below, relatively substantial recovery upon the class.

Factor (3) generally does not weigh heavily in favor of settlement in securities fraud class actions, because class treatment is generally appropriate in such litigation.

The amount of the settlement is substantial in comparison to various measures of the maximum potential recovery, thereby aligning factor (4) in favor of settlement.  According to plaintiff's expert Dr Marc Vellrath, the maximum damages available to the class in the merger action is $28.7 million.  The settlement of $12.65 million represents 44% of Dr Vellrath's estimated total damages.  This percentage is well above the mean and median observed in the Bajaj Report relied upon by this court in <u>In re Cylink Securities Litigation</u>, 274 F Supp 2d 1109, 1114 (ND Cal 2003) (Walker, J).

The settlement can also be evaluated against the total "market drop."  Id at 1113.  The value of PAH shares never exceeded $44/share during the class period, and sold for approximately $10/share at the end of the class period, with a difference of $34/share.  Multiplying this figure by 5.75 million (the approximate number of shares held by class members during the class

**4**

United States District Court

For the Northern District of California

period) yields a total market drop of $195.5 million.  The proposed settlement represents 6.47% of the total market drop, which is significantly higher than the mean and median identified in the Bajaj Report relied upon by the court in <u>Cylink</u>.  See id at 1114 (identifying a market drop recovery mean of 2.95% and a median of 2.02%).

Factor (5) strongly favors settlement.  This litigation is now in its sixth year and had proceeded for four years before settlement negotiations commenced.  Class counsel has reviewed over 200,000 documents produced in the course of discovery.  Moreover, this discovery was conducted before, and therefore presumably informed, the settlement negotiations.

The views of counsel, factor (6), support settlement.  While some courts have indicated that such views are entitled to deference, see, e g, <u>Williams v Vukovich</u>, 720 F2d 909, 922-23 (6th Cir 1983), the court is reluctant to put much stock in lead counsel's pronouncements, given their obvious pecuniary interest in seeing the settlement approved.

Factor (7) does not support the settlement, inasmuch as there is no government participant present.

Factor (8) strongly supports the settlement.  The response to the notice mailed to individual class members and published in <u>The San Francisco Chronicle</u> and <u>Investor's Business Daily</u> has been positive.  The claims administrator has received hundreds of proof of claim forms.  More importantly, no objector has come forward.  And although two class members have requested exclusion from the settlement (i e, opted out), see Doc #219 (Marotto Decl), Ex A, in the main class members have elected to

United States District Court
For the Northern District of California

remain in the class.

        As discussed in the 7/14/05 order, the settlement was
reached after protracted arm's-length negotiations by experienced
counsel.  7/14/05 order at 5.  Factor (9) therefore supports the
settlement.

        Finally, factor (10) supports the settlement because lead
plaintiff participated in the settlement negotiations, see Doc #185
(Molumphy Decl) at 4, ¶11, something Congress sought to foster by
the PSLRA's lead plaintiff provisions.

        For the reasons discussed above and in its 7/14/05 order,
the court finds that, on balance, the settlement is fair,
reasonable and adequate to the class within the meaning of FRCP
23(e)(1)(C).  Accordingly, the court GRANTS plaintiff's motion for
final settlement approval.

                                  II

        As suggested by the court's extended discussion of the
plan of allocation in its 7/14/05 order, the court has harbored
doubts about the plan of allocation inasmuch as it extinguishes the
claims of a large number of class members in exchange for zero
recovery.  Specifically, class members who sold their PAH shares on
or before November 8, 1998, (the "in-and-out" class members) will
recover nothing under the proposed plan of allocation.

        Recognizing that the best course was to allow in-and-out
class members to decide for themselves, the court preliminarily
approved the plan of allocation, subject to modifications in the
form of notice that would explicitly and with emphasis warn in-and-
out class members that they were giving up their right to recover

**6**

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  in exchange for no consideration.  Specifically, the court ordered:

2          The following language shall be inserted before the
           last paragraph of part VII:  "The exact recovery
3          received by each Settlement Class Member is
           determined by the Plan of Allocation, which is
4          described in Part IX.  <u>Under the Plan of Allocation,</u>
           <u>some Settlement Class Members will receive nothing,</u>
5          <u>but will nonetheless give up their right to pursue</u>
           <u>the Released Claims against the Released Persons.</u>
6          <u>In particular, Settlement Class Members who</u>
           <u>exchanged their shares on a one-for-one basis for</u>
7          <u>shares in Patriot but sold the Patriot shares on or</u>
           <u>before November 9, 1998, will receive nothing under</u>
8          <u>the plan of allocation.</u>  <u>*If you are a Settlement*</u>
           <u>*Class Member who falls within the group described*</u>
9          <u>*above, you may wish to exercise your rights*</u>
           <u>*described in part VIII of this notice, or to use the*</u>
10         <u>*procedures described in part IX of this notice*</u>."

11
12  7/14/05 order at 10:13-11:3.  The court concludes that, with the

13  inclusion of this language, the notice directed to class members

14  adequately advised them of the proposed plan of allocation and

15  their rights with respect thereto.

16          No class member came forward to object to this plan of

17  allocation.  It does not appear that either of the two class

18  members who elected to opt out were in-and-out class members.  See

19  Marotto Decl, Ex A.  The court is therefore constrained to find

20  that the class does not object to the proposed plan of allocation.

21          After further review of the report of plaintiff's expert,

22  Dr Vellrath, the court is satisfied that the plan of allocation

23  distributes funds consistent with the various levels of price

24  inflation that existed during the class period.  Dr Vellrath based

25  the plan of allocation on an event study prepared by Dr Scott

26  Hakala.  See Doc #178 (Hakala Decl).  Based on Dr Hakala's

27  findings, Dr Vellrath concluded that PAH shares were inflated by

28  11.1% at the time of the merger, which, after accounting for stock

7

United States District Court

For the Northern District of California

splits, equals approximately $2.477 per share (rounded up to $2.48 per share).  Doc #205 (Vellrath Decl) at 4 n2.  On November 9, 1998, PAH disclosed proceeds from the sale of PAH properties in an amount insufficient to fund PAH's forward equity contract obligations.  Hakala Decl at 11.  In Dr Vellrath's estimation, this disclosure reduced the amount of price inflation attributable to defendants' alleged misrepresentations to 4.7%.  Vellrath Decl at 7.  On December 16, 1998, PAH announced a recapitalization plan to settle PAH's forward equity contract obligations.  This disclosure produced an initial upturn in the price of PAH stock, followed by a downturn on December 17, 1998.  Dr Vellrath agreed with Dr Hakala's assumption that all fraud-induced inflation was eliminated from the price of PAH shares as of December 17, 1998 (the end of the class period).  Id.

The court is satisfied that the event study prepared by Dr Hakala is sufficiently sound for purposes of supporting Dr Vellrath's plan of allocation.  Viewing these findings against a backdrop devoid of objections and opt-outs by in-and-out class members, the court finds it appropriate to GRANT plaintiff's motion for final approval of the plan of allocation.  Settlement proceeds shall be distributed among class members as follows:

    (1)   For shares sold on or after December 17, 1998, and for "retention" shares held on May 7, 1999:  $2.48 per share;

    (2)   For shares sold on or before November 9, 1998: No damages;

    (3)   For shares sold on or after November 9, 1998, and on or before December 15, 1998:  $2.48 per share less 4.7% of the selling price; and

United States District Court

For the Northern District of California

1    (4)   For shares sold on December 16, 1998:   $2.48 per share

2          less 10.9% of the selling price.

3

4                              III

5          Plaintiff seeks an award of attorneys' fees in the amount

6    of $2,500,000 to be paid from the settlement fund.  Plaintiff also

7    seeks reimbursement in the amount of $81,805.58 for expenses

8    incurred to date.  Plaintiff further requests authorization to make

9    future payments from the settlement fund to the claims

10   administrator for additional expenses not yet incurred.  At the

11   hearing, plaintiff's counsel suggested that these future costs

12   should not exceed $45,000.  Adding these figures to the requested

13   fee award produces a sum total award of $2,626,805.58, which

14   represents 20.6% of the common fund.  A percentage of 20.6% is at

15   the low end of the range and below the mean for the percentage of

16   common funds devoted to attorneys' fees and costs.  See 7/14/05

17   order at 11 (reciting data from Stuart J Loan, Jack Moshman &

18   Beverly C Moore, Attorney Fee Awards in Common Fund Class Actions,

19   24 Class Action Rep 167 (2003)).  As noted elsewhere, the court has

20   serious reservations about the adequacy of such a comparison to

21   test the reasonableness of a fee award.  See generally Vaughn R

22   Walker & Ben Horwich, The Ethical Imperative of a Lodestar Cross-

23   Check:  Judicial Misgivings About "Reasonable Percentage" Fees in

24   Common Fund Class Actions, 18 Georgetown J Legal Ethics 1453

25   (2005).

26          Yet, and as discussed in the 7/15/04 order, plaintiff's

27   counsel performed a lodestar cross-check consistent with the

28   analysis set forth in In re HPL Technologies, Inc Securities Litig,

United States District Court

For the Northern District of California

366 F Supp 2d 912 (ND Cal 2005) (Walker, J).  The lodestar cross-check produced a lodestar amount of $951,523,75, resulting in an implied multiplier of approximately 2.63.  7/14/05 order at 12 (citing Doc #196 at 10).  While an implied multiplier of this magnitude appears to be on the high side of reasonableness, class members' apparent satisfaction with the terms of the settlement and the plan of allocation, as well as counsel's performance, militates in favor of the award.  This is sufficient to satisfy the court in this case that there is no great public disservice in making an award of this scale relative to the amount of attorney effort.

Accordingly, the court GRANTS plaintiff's motion for attorneys' fees and expenses in the amount of $2,626,805.58.

IV

In sum, plaintiff's motion for final settlement approval, final approval of the plan of allocation and an award of attorneys' fees and expenses is GRANTED.


IT IS SO ORDERED.


_____

VAUGHN R WALKER

United States District Chief Judge

10