IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re PATRIOT AMERICAN HOSPITALITY INC SECURITIES LITIGATION | MDL No  C-00-1300 VRW<br><br>ORDER |
| This Document Relates To: | |
| THE OPEN MARKET ACTION | |
| 00-0875 VRW    00-0948 VRW<br>00-0949 VRW    00-1478 VRW | |
| _____/ | |

As described in this court's preliminary approval order of July 14, 2005, Doc #207 (the "7/14/05 order"), the lead plaintiff in this securities class action, Deborah Szekely, has reached a settlement with the defendants.  In that order, the court preliminarily approved the proposed settlement, certified a settlement class pursuant to FRCP 23, preliminarily approved the proposed plan of allocation, approved (subject to certain modifications) a form of notice to be sent to class members and preliminarily approved the lead plaintiff's application for an award of attorneys' fees and expenses.  Notice having been

disseminated to the class under the terms of the court's order, see Doc #217 (Hansman Decl), plaintiff now moves for final approval of the proposed settlement, final approval of the plan of allocation and an award of attorneys' fees and expenses.  Doc #216.

The court held a final settlement approval hearing on October 18, 2005.  For the reasons that follow, the court GRANTS final approval of the proposed settlement, GRANTS final approval of the plan of allocation and GRANTS an award of attorneys' fees and expenses.  Because the court's previous order addressed many of the issues presented here for final approval, the court assumes familiarity with the 7/14/05 order and the definition of terms therein; the court will confine its discussion in this order to recent developments and further analysis.

I

The court first takes up the issue of the fairness of the settlement, which, in the aggregate, consists of $5 million in cash.  In assessing whether a settlement is "fair, reasonable and adequate" under FRCP 23(e)(1)(C), this court is to consider several factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement [presumably in comparison to comparable cases]; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

Churchill Village v General Electric, 361 F3d 566, 575 (9th Cir 2004) (citing Hanlon v Chrysler Corp, 150 F3d 1011, 1026 (9th Cir

1998)). To these factors, the court adds (9) the procedure by which the settlements were arrived at, see Manual for Complex Litigation (Second) § 30.44 (1985), and (10) the role taken by the lead plaintiff in that process, a factor somewhat unique to the Private Securities Litigation Reform Act (PSLRA).

Factor (1) favors settlement. In securities litigation to which the PSLRA's heightened pleading requirements applies, survival of the pleading stage is a good (albeit imperfect) indicator of the strength of a case. In this case, two complaints have been dismissed by the court.

Even if the class were to survive the pleading stage, the class claims, which are premised upon sections 10(b) and 20(a) of the Securities Exchange Act of 1934, would be subject the "bespeaks caution" doctrine and the safe harbor provision for forward-looking statements under the PSLRA. Frankly, the case is not that strong. Continued litigation of this matter is a risky proposition for the class. At the very least, there is substantial risk that a motion to dismiss the second amended complaint will result in dismissal with prejudice. Class counsel also point to a risk of non-recovery or diminished recovery if the litigation were to continue, given the precarious financial position of both Patriot and its primary directors and officers insurance carrier at the time of settlement. Doc #216 at 13-14; see also Torrisi v Tucson Elec Power Co, 8 F3d 1370, 1376 (9th Cir 1993) (characterizing defendant's financial position as a "predomina[nt]" factor favoring settlement approval). The court is reluctant to accord too much weight to these unsubstantiated statements. Factor (2) nonetheless weighs in favor of settlement given that the court has twice dismissed complaints

3

in this case.

Factor (3) generally does not weigh heavily in favor of settlement in securities fraud class actions, because class treatment is generally appropriate in such litigation.

In the 7/14/05 order, the court expressed skepticism at the amount of the settlement, which appeared to be "somewhat low when compared to settlements in similar cases." 7/14/05 order at 4. Although factor (4) cuts against the settlement, this alone will not defeat the settlement in light of the significant risks that would accompany continued litigation.

Because this litigation has not proceeded beyond the pleading stage, no formal discovery has taken place. According to class counsel, however, defendants produced over 67,000 documents relating to the class claims after an agreement-in-principal had been reached between the class and defendants. Doc #195 (Downs Decl) at 12, ¶43. The court is satisfied that class counsel availed the class of all available opportunities to develop a factual basis upon which to evaluate the claims and the risks of going forward. Thus, factor (5) tends to support the settlement.

The views of counsel, factor (6), support settlement. While some courts have indicated that such views are entitled to deference, see, e g, <u>Williams v Vukovich</u>, 720 F2d 909, 922-23 (6th Cir 1983), the court is reluctant to put much stock in lead counsel's pronouncements, given their obvious pecuniary interest in seeing the settlement approved.

Factor (7) does not support settlement, inasmuch as there is no government participant present.

Factor (8) strongly supports settlement. The response to

**4**

the notice mailed to individual class members and published in <u>The San Francisco Chronicle</u> and <u>Investor's Business Daily</u> has been positive. No objector has come forward. Three class members have requested exclusion from the settlements (i e, opted out), but in the main class members have elected to remain in the class. Doc #220.

As discussed in the 7/14/05 order, the settlement was reached in a procedurally acceptable manner. Specifically, the court found that the settlement negotiations were "vigorously adversarial" and conducted at arm's-length by experienced counsel. Factor (9) thus militates in favor of the settlement. 7/14/05 order at 4.

The court accepts as true class counsel's representation that lead plaintiff "was a participant in th[e] assessment [of the settlement] and was consulted with and kept apprised concerning the settlement negotiations." Downs Decl at 12, ¶40. Accordingly, factor (10) supports the settlement insofar as lead plaintiff was involved in the settlement negotiations, something Congress sought to foster by the PSLRA's lead plaintiff provisions.

For the reasons discussed above and in the 7/14/05 order, the court finds that, on balance, the settlement is fair, reasonable and adequate to the class within the meaning of FRCP 23(e)(1)(C). Accordingly, the court GRANTS plaintiff's motion for final approval of the settlement.

II

As suggested by the court's extended discussion of the plan of allocation in the 7/14/05 order, the court has harbored

significant doubts about the plan of allocation inasmuch as it extinguishes the claims of a large number of class members in exchange for zero recovery.  Specifically, class members who purchased Patriot paired-shares on or after January 5, 1998, and sold on or before November 8, 1998, (the "in-and-out" class members) will recover nothing under the proposed plan of allocation.

Recognizing that the best course was to allow in-and-out class members to decide for themselves, the court preliminarily approved the plan of allocation, subject to modifications in the form of notice that would explicitly and with emphasis warn in-and-out class members that they were giving up their right to recover in exchange for no consideration.  Specifically, the court ordered:

> The following language shall be inserted before the last paragraph of part VI:  "The exact recovery received by each Settlement Class Member is determined by the Plan of Allocation, which is described in Part IX.  Under the Plan of Allocation, some Settlement Class Members will receive nothing, but will nonetheless give up their right to pursue the Released Claims against the Released Persons.  Specifically, Settlement Class Members who purchased paired-shares of Patriot on or between January 15, 1998, and November 8, 1998, and sole the paired-shares of Patriot on or before November 8, 1998, will receive nothing under the Plan of Allocation.  Also, Settlement Class Members who purchased paired-shares of Patriot on or between November 9, 1998, and December 15, 1998, and sold the paired-shares of Patriot on December 16, 1998, will receive nothing under the plan of allocation.  *If you are a Settlement Class Member who falls within the group described above, you may wish to exercise your rights described in part VIII of this notice, or to use the procedures described in part IX of this notice*."

7/14/05 order at 11-12.

The court concludes that, with the inclusion of this language, the notice directed to class members adequately advised them of the

proposed plan of allocation and their rights with respect thereto.

No class member came forward to object to this plan of allocation. Nor does it appear that any of the three class members who elected to opt out were in-and-out class members. The court is therefore constrained to find that the class does not object to the proposed plan of allocation.

As discussed in the 7/14/05 order, the plan of allocation is based on an event study performed by Dr Scott Hakala, who identified three statistically significant events that produced fluctuations in Patriot share prices reasonably attributable to the misrepresentations alleged in the second amended complaint: (1) the November 9, 1998, disclosure of the amount of proceeds from the sale of Patriot properties, which was less than the amount of Patriot's existing forward equity contract obligations; (2) the December 16, 1998, announcement of an equity infusion in the amount of $1 billion and (3) the market's negative reaction on December 17, 1998, to the December 16, 1998, announcement. The court finds the methodologies employed by Dr Hakala to be sound. The court further concludes that the plan of allocation adequately incorporates Dr Hakala's findings and that the compensation of individual class members is fair in relation to the varying levels of allegedly fraud-induced inflation that existed at different points during the class period.

Because the plan of allocation is reasonably supported by expert analysis and has met with the apparent approval of the class, the court GRANTS plaintiff's motion for final approval of the plan of allocation. Settlement proceeds shall be disbursed among class members as follows:

7

(1) For shares purchased on or between January 5, 1998, and November 8, 1998, the following claims for damages shall be allowed:
   (a) For shares sold on or before November 8, 1998, no damages shall be allowed;
   (b) For shares sold on or after November 9, 1998, and on or before December 15, 1998, damages shall be 11.1% of the purchase price less 4.7% of the selling price;
   (c) For shares sold on December 16, 1998, damages shall be 11.1% of the purchase price less 10.9% of the selling price;
   (d) For shares sold on or after December 17, 1998, damages shall be 11.1% of the purchase price.

(2) For shares purchased on or between November 9, 1998, and December 15, 1998, the following claims for damages shall be allowed:
   (a) For shares sold on or after November 10, 1998, and on or before December 15, 1998, damages shall be 4.7% of the purchase price less 4.7% of the selling price;
   (b) For shares sold on December 16, 1998, damages shall be zero;
   (c) For shares sold on or after December 17, 1998, damages shall be 4.7% of the purchase price.

(3) For shares purchased on December 16, 1998, the following claims for damages shall be allowed:
   (a) For shares sold on or before December 16, 1998, no

8

    damages shall be allowed;

  (b) For shares sold on or after December 17, 1998, damages shall be 14.1% of the purchase price.

## III

Plaintiff moves for an award of attorneys' fees in the amount of $875,000 (17.5% of the $5 million settlement fund) and reimbursement for expenses in the amount of $134,939.28. The total requested fees and expenses amounts to $1,009,939.28, which represents 20.2% of the common fund. As discussed in the 7/14/05 order, a percentage of 20.2% is at the low end of the range and below the mean for the percentage of common funds devoted to attorneys' fees and costs. See 7/14/05 order at 13 (reciting data from Stuart J Loan, Jack Moshman & Beverly C Moore, <u>Attorney Fee Awards in Common Fund Class Actions</u>, 24 Class Action Rep 167 (2003)). Further, plaintiff's counsel performed a lodestar cross-check consistent with the analysis set forth in <u>In re HPL Technologies, Inc Securities Litig</u>, 366 F Supp 2d 912 (ND Cal 2005) (Walker, J). The lodestar cross-check produced a lodestar amount of $639,142.25, resulting in an implied multiplier of approximately 1.37. The court adheres to its initial opinion that a multiplier of 1.37 "is far from exceeding the multipliers the court has, in its experience, encountered and observed in other common fund securities class actions." 7/14/05 order at 14.

Accordingly, the court GRANTS plaintiff's motion for an award of attorneys' fees and expenses in the amount of $1,009,939.28, to be paid from the common fund.

//

9

IV

In sum, the court GRANTS plaintiff's motion for final settlement approval, GRANTS plaintiff's motion for final approval of the plan of allocation and GRANTS plaintiff's motion for an award of attorneys' fees and expenses.

IT IS SO ORDERED.

VAUGHN R WALKER

United States District Chief Judge